# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| SHANNON DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:20-cv-01742-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Shannon Davis ("Davis") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Davis timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record, and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On October 9, 2018, Davis filed a Title II application for a period of disability and DIB, as well as a Title XVI application for SSI, alleging disability beginning October 31, 2016. (Tr. 140-52). After the agency denied his application, Davis requested and appeared at a hearing before an Administrative Law Judge ("ALJ") on January 30, 2020. (Tr. 84-85, 31-43)). The ALJ issued an

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (*See* doc. 13).

unfavorable decision on February 8, 2020, finding Davis not disabled.  (Tr. 12-30).  Davis requested review of the ALJ's decision, but the Appeals Council denied his request on September 30, 2020.   (Tr. 1-6).   On that date, the ALJ's decision became the final decision of the Commissioner.  On November 4, 2020, Davis initiated this action.  (*See* doc. 1).

Davis was 35 years old on his alleged onset date and 38 years old when the ALJ rendered his decision.  (Tr. 27, 140).  He has a high school education, plus three years of college.  (Tr. 170).  Davis has past work experience as a primer/laborer at a car parts business.  (*Id.*).  He alleges disability due to back pain, migraine headaches, and depression. (Tr. 34-36).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence.  "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed
        by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and

_____

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Davis meets the insured status requirements of the Social Security Act through September 30, 2018, and that Davis had not engaged in substantial gainful activity since October 31, 2016, the alleged onset date.  (Tr. 18).  At Step Two, the ALJ found Davis had the following severe impairments: mild degenerative disc disease with broad-based bulging at L4-5; mild central canal and foraminal stenosis at L4; hernia(s); and chronic pain syndrome.[4]  (*Id.*).  At Step Three, the ALJ found Davis did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Before proceeding to Step Four, the ALJ determined Davis's residual functioning capacity

---

[4] The ALJ found Davis's migraines, gastroesophageal reflux disease, depression, anxiety, and obesity to be non-severe impairments.  (Tr. 18).

("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined that Davis had the RFC to perform a full range of sedentary work as defined in 20 CFR 404.1567(a), 416.967(a).[5]  (Tr. 22-26).

At Step Four, the ALJ determined Dais had no past relevant work.  (Tr. 26).  The ALJ then considered Davis's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines and found Medical-Vocational Rule 201.27 directed a finding of "not disabled."  (*Id.*).  Thus, at Step Five the ALJ found jobs exist in significant numbers in the national economy Davis could perform. (*Id.*).  Therefore, the ALJ determined Davis had not been under a disability from October 31, 2016, through the date of the decision and denied Davis's claim.  (Tr. 26-27).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).  Here, the record demonstrates that substantial evidence supports the ALJ's determination that Davis failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.

---

[5] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  *See* 20 CFR 404.1567(a).

Davis contends the ALJ's exclusive use of the Medical-Vocational Guidelines, or "Grids," to determine he was not disabled was inappropriate because Davis's pain significantly compromised his ability to perform a full range of sedentary work and, thus, a vocational expert should have been utilized. (Doc. 14 at 9). Specifically, Davis points to some evidence to support his subjective complaints and argues the ALJ should have included non-exertional limitations in his RFC. (*Id.* At 9-15).

## A.  Using the Grids or Testimony from a Vocational Expert

To determine if a claimant can perform work, the ALJ must assess his RFC, which is the most the claimant can do despite his impairments.  20 C.F.R. 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v).  After determining the claimant's RFC, the ALJ must then determine the vocational opportunities available to the claimant. (Tr. 26).  Once the ALJ finds that the claimant cannot return to prior work, the burden of proof shifts to the Secretary to show other work the claimant can do.  *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985). The Secretary bears the burden of establishing that the claimant, who cannot perform his past work (or has no past work), could perform alternative work in the national economy.

This can sometimes be accomplished through reliance on the Medical-Vocational Guidelines (the "Grids").  The regulations regarding the implementation of the Grids caution that they are only applicable under certain conditions.   "[E]xclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functioning level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987) (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985).  For example, exclusive reliance on the Grids is appropriate in cases involving only exertional impairments (impairments which place limits on an

individual's ability to meet job strength requirements). *Heckler v. Campbell*, 461 U.S. 458 (1983).

Davis argues that, because pain results in non-exertional impairments, the ALJ erred when he exclusively relied on the Grids, and that he should have had to seek expert vocational testimony to determine Davis's vocational opportunities.  (Doc. 14 at 11).  However, as discussed below, there is nothing in record to compel a finding of non-exertional impairments, and the ALJ properly evaluated Davis's subjective complaints.  Because the ALJ found Davis could perform a full range of sedentary work, reliance on the Grids was proper.

**B.  The ALJ Properly Evaluated Davis's Subjective Complaints of Pain**

Davis contends that, based on his subjective complaints, the ALJ should have found additional non-exertional limitations.  When a claimant alleges disability based on claims of pain or other symptoms, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to the alleged symptoms. *See* CFR §§ 404.1529, 416.929. If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effects on the claimant's ability to work. *See* CFR 404.1529(c), 416.929(c).  If the ALJ does not fully credit the claimant's subjective pain testimony, the ALJ's decision must articulate the reasons and those reasons must be supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11 Cir.1987).

Social Security Ruling 16-3p directs the ALJ to consider a number of factors before making a conclusion regarding the validity of a claimant's testimony and resulting limitations, including (1) the individual's daily activities, (2) the location, duration, frequency, and intensity of the

individual's pain or other symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms, (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms, and (7) any other relevant factors concerning the individual's functional limitations and restrictions.

The ALJ applied this standard and found Davis's subjective complaints were inconsistent with (1) the objective medical evidence; (2) his conservative treatment history, (3) Davis's own testimony regarding his shoulder; (4) reports of his daily activities; (5) reports from Davis's mother; and (6) Dr. Iyer's opinion.  (Tr. 22-26).

As to objective medical evidence, the ALJ explained "more often than not, [Davis's] musculoskeletal exams have been normal or he has presented with only mild clinical findings." (Tr. 25, 285, 291-92, 294, 301, 304, 307, 311, 320, 346, 390, 412).  Clinical exams routinely show normal extremities findings, or normal back findings, or only minor abnormalities at isolated examinations.   (Tr. 285, 291-92, 294, 301, 304, 307, 311, 320, 346, 390, 412).  An October 2016 MRI showed mild degenerative disc disease at L4 and L5 with broad-based bulging and mild central canal and foraminal stenosis at L4.  (Tr. 25, 340-41).  At the consultative examination with Dr. Iyer, Davis had a normal gait, could walk on his heels and tiptoes, and squat.  (Tr. 25, 400). He could place his hands behind his head and lower back.  (Tr. 25, 401). He had normal grip strength, normal muscle power in the upper and lower extremities, and a negative straight leg raise Test. (Tr. 25, 401). He had tenderness of the paralumbar muscles but still had full range of motion of the lumbar spine. (Tr. 25, 401).

The ALJ also found Davis's subjective complaints inconsistent with his treatment history,

8

including the conservative treatment he received and lack of treatment.  (Tr. 23).  For Davis's back issues, he had an epidural steroid injection in May 2017, but there was no evidence of follow-up (Tr. 25, 328). As the ALJ noted, Davis's "back pain [was] managed routinely and conservatively with non-narcotic pain medication at most." (Tr. 25, 290, 300, 302, 305, 308, 311-12, 399).  Davis reported to Dr. Iyer that he took over-the-counter medication for his back pain (tr. 25, 399), and the ALJ noted that it was not clear whether Davis was taking prescription medication for his pain. (Tr. 24).  Davis also told Dr. Iyer that he took over-the-counter medication for migraines[6] and that he had not taken any antidepressant medication. (Tr. 25, 399).

The ALJ found Davis's subjective complaints inconsistent with his own testimony about his shoulder impairment. (Tr. 24).  Specifically, Davis testified his rotator cuff issue was not a current issue related to his ability to work. (Tr. 39).

Next, the ALJ found Davis's subjective complaints inconsistent with his daily activities. (Tr. 23).  In a Function Report, Davis reported that he took care of his three children.  (Tr. 23, 186-87).  He did not need special reminders to take care of his personal needs and grooming or need help or reminders to take his medication. (Tr. 23, 188). He was able to prepare simple meals, do household chores such as cleaning and laundry, although the activities were somewhat limited by his conditions. (Tr. 23, 188). He was able to drive and go out alone. (Tr. 23, 189). He could shop in stores and by computer. (Tr. 23, 189). He could pay bills, count change, handle a savings account, and use a checkbook/money order. (Tr. 23, 189). He had hobbies and interests, including

---

[6] During the hearing, Davis testified he takes a preventative medication for his migraines. (Tr. 36).  Records from 2016 and 2017 show Davis was prescribed Trokandi XR to prevent migraines.  (Tr. 284, 287, 290, 294, 300, 303, 306).  However, Davis reported during his consultative examination in 2018, that he was not taking any medication.  (Tr. 399, 404).  Also in 2018, Davis indicated on the Headache Questionnaire that he was not prescribed any medication for headaches but he took various over-the-counter medications.  (Tr. 205).

music, comic books, spending time with his children, and watching television, although the activities were somewhat limited by his conditions. (Tr. 23, 190). He spent time with others, mainly his children (Tr. 23, 190). He went to church on a regular basis. (Tr. 23, 190). He did not need reminders to go places and did not need someone to accompany him. (Tr. 23, 190). He did not have problems with understanding, following instructions, or using his hands. (Tr. 23, 191). He did not have problems getting along with authority figures, and he had never been fired or laid off from a job because of problems getting alone with others. (Tr. 23, 192).

The ALJ also found Davis's subjective complaints inconsistent with reports from his mother. (Tr. 23). Davis's mother reported he did not have any problems with memory, completing tasks, understanding, following instructions, or getting along with others. (Tr. 23, 201-02). Finally, the ALJ found Davis's subjective complaints inconsistent with Dr. Iyer's opinion that Davis "did not appear to have any significant physical limitations." (Tr. 25, 401).

After a thorough analysis of the record, the ALJ discounted Davis's subjective complaints based on these inconsistencies. (Tr. 22-26). Davis does not argue the ALJ reasons are unsupported by substantial evidence. Instead, Davis contends there is other evidence to support his subjective complaints, including those that would necessitate non-exertional limitations. (Doc. 14 at 9-15). That is not the standard of review. As explained, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Walden*, 672 F.2d at 838. Here, the ALJ's articulated reasons for discounting Davis's subjective complaints and those reasons are supported by substantial evidence.

It appears Davis believes that because he alleges pain, or has impairments that cause pain, he automatically has non-exertional limitations. (*See* doc. 14 at 11.) Pain is a symptom that may or may not cause functional limitations, which may be exertional, non-exertional, or a combination

of both.  Symptoms, such as pain, are considered with other evidence to determine a claimant's ability to work, and specifically in assessing the claimant's RFC.  *See* 20 C.F.R. 404.1529(a), 404.1545(a), 404.1546(c), 404.1569a.  When an ALJ determines a claimant does not have any non-exertional limitations, the ALJ may rely on the Grids and is not required to consult a VE.  *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1307 (11th Cir. 2018) ("Given that [the claimant] was able to perform a full range of sedentary work and did not have any non-exertional impairments that significantly limited her basic work skills, the ALJ permissibly relied on the vocational grids to determine [the claimant's] ability to adjust to other work in the national economy.").  Davis points to nothing in the record that shows the ALJ erred by not including non-exertional limitations.

To the extent Davis's contention that his medication make him drowsy could be construed as an argument that he would have issues with concentration (or that it requires another non-exertional limitation), the ALJ addressed this allegation and found it inconsistent with Davis's reports.  (Tr. 24).  As the ALJ noted, Davis reported during both his physical and psychological consultative examination that he was not taking any medication. (Tr. 399-400, 404).  Davis also completed a Headache Questionnaire in November 2018, and reported he was not prescribed any medication for his headaches but that he took various over-the-counter medications.  (Tr. 204-205).  Accordingly, the ALJ properly discounted Davis's subjective complaints, and Davis has not shown any error that would require additional limitations.  Because the ALJ found Davis could perform a full range of sedentary work, reliance on the Grids to determine he was not disabled was proper.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and

memoranda of the parties, decision of the Commissioner of Social Security denying Davis's claim for a period of disability, DIB, and SSI is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.**  A separate order will be entered.

DONE this 14th day of March, 2022.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

12